# SUPERIOR COURT.

## SPRING SESSIONS,

## 1832.

---

### JOHN GOSLIN *vs.* ISAAC CANNON.

A deposition to a leading interrogatory will not be suppressed at the trial if full opportunity has been given to object to it before.

Words spoken to a magistrate, though slanderous and malicious, are not actionable: but, if the slander be proved *aliunde*, they may be given in evidence to aggravate the damages.

CAPIAS case.   Plea, Not guilty.   Special Jury.

This was an action on the case for slanderous words spoken by deft. of the plff., imputing to him the crime of burning a house and barn.   The declaration contained twenty-five counts laying the words spoken in various forms; one of them thus:—

After the *inducement* and *colloquium*—" I would give $500, if I could believe that John Goslin did not do it," meaning, &c.

*Frame* for plff. offered in evidence the deposition of William Tobin, taken under a commission out of this court to a commissioner in Baltimore.

It was objected to by Mr. *Bayard* for deft.: 1st, on the ground of surprise, there being no entry on the docket of the return of this deposition; and 2ndly, because the interrogatories were leading. The second interrogatory, particularly objected to, was as follows: " Second.—Had Isaac Cannon the brother of Jacob Cannon any conversation with you, or any other person or persons in your presence, relative to a house and barn which had been burned down? If yea, state the time of that conversation, or whether it was before the ——— day of ——— 1829; and whether in that conversation the said Isaac Cannon stated that he did believe that John Goslin set fire to said houses or one of them, and which; whether he stated that John Goslin was the cause of said houses being burned down; whether he stated that he would give $500 if he could think otherwise, and every other matter or thing that you heard said Isaac Cannon say relative to the burning of said houses, and as to the said John Goslin's being by him charged or accused therewith according to the best of your knowledge, remembrance and belief, fully and at large."

*Frame* for plff.   The deposition was regularly returned and filed more than one year ago, and published.   So far as the party could possibly get it filed, it was filed.   The envelope is marked " filed"

by the Prothonotary, though the entry of such filing is not made upon the record. The docket entry is not the filing; it is a mere memorandum of the filing, which is the placing the paper on the files. As to the other point, the interrogatory is not a leading one; and, if it were, the objection is both too late and informally taken. It ought to have been made in writing at the earliest possible stage of the cause; if allowed now, it will operate as a trap. The jury are sworn, the trial progressing, and there is now no possibility of procuring another deposition, which might have been done if this had been objected to in due time. The other side had full notice of the time of filing these interrogatories and opportunity to file cross interrogatories. This is admitted.

*Rogers* for deft. I had no knowledge of this deposition until this morning. We could have no notice of the return of the commission but from the record, and there is no entry of it on the record. We are therefore not too late. But, if we had notice, this is the regular time of objecting to the testimony. An objection to testimony was never made in any of our courts of law at any other time or in any other manner. The practice is different in Chancery, where, upon objection made to leading interrogatories, the matter is referred to a master for his report. Refers to a case in the Com. Pleas where a deposition was objected to at the trial because the commission was directed to Joseph Douglass and returned by Joseph S. Douglass, and the deposition was rejected. Depositions will be suppressed if too particular or leading; so where the answer *yes* or *no* would be conclusive. 1 *Har. Chy.* 320; 1 *Starkie Ev.* 124.

*Per* C. J. CLAYTON.—That remark of Lord Ellenborough is not always true. *Vide Nicholls* vs. *Dowding*, 1 Stark. N. P. C. 81.

*Frame* asked leave to reply to the authorities cited.

The objection is not to a defective deposition as of heresay matters, nor to a commission defectively executed or returned, as where it is addressed to one person and returned by another; but the objection is to the interrogatory alone, and seeks to exclude a competent deposition properly taken and returned, on the ground of an irregular interrogatory. Now this interrogatory was filed, and notice of it given to the other side a year ago. Even in Chancery, if you omit to object to interrogatories in due time, you are precluded at the trial. Every good interrogatory must direct the mind of the witness to the subject matter of inquiry, and it is difficult to say precisely, what is a leading question. 1 *Stark.* 124. *Equity Draftsman.*

*Bayard.*—You may direct a witness' mind to the point, but not ask particulars, or suggest to him an answer. This is undoubtedly a leading interrogatory. I had no knowledge of the deposition until this morning. It would be a good practice to require exceptions to be filed to interrogatories before commission issued, but there is no such practice. In our practice, a party frames his interrogatory at his peril just as he puts a question to a witness at the trial.

*By the Court.*—We are of opinion that this deposition ought not to be suppressed. We incline to think the interrogatory is a leading one, but it is a very different question whether the deposition should now be suppressed on this account.

This deposition has been returned for twelve months. The party has submitted to it, taken no exceptions, but permits the jury to be drawn. If this course prevail, there is an end of reading depositions before a jury. The party might protest against an interrogatory and then the other side would take it at his peril. The question must be objected to at the time; therefore, if in taking the deposition of a witness a leading question be put and answered, it cannot afterwards be excepted to at the trial. *Sheeler* vs. *Speer,* 3 Binn. 130. Where depositions have been taken in an ancient suit to perpetuate testimony, it cannot be objected that the answers were given to leading interrogatories, since the party to the proceedings might have objected to them, and have had them expunged, instead of which he allowed publication to pass, and the evidence to be exemplified. 1 *Stark. Ev.* 270.

The deposition was admitted.

In the course of the examination of witnesses, the plff. called Dr. John Gibbons, a justice of the peace, to prove certain declarations made to him by the deft. on the occasion of swearing articles of the peace against the plff. It was objected that this testimony if at all admissible, was only evidence to show express malice, and could not be the foundation of an action it being a privileged communication. The direction of the Court was asked on this point. 1 *Vin. Ab.* 390; 4 *Co. R.* 14; 3 *Esp. R.* 33; 5 *Esp. R.* 109; 4 *Yeates,* 507; 5 *Johns,* 509.

The case was very fully argued by *Layton* and *Frame* for the plff., and *Cullen, Rogers* and *Bayard,* for the deft. and

*The Court,* by the Ch. Jus., charged the jury as follows:

CLAYTON, C. J.—" The words declared upon in this case impute a crime to the plff., and are in themselves actionable. The law in such case presumes malice, and it is not necessary to prove express malice to entitle the plff. to a verdict, for the law implies that he has received some damage.

As the law is now settled, it may be laid down as a general rule, that wherever words are calculated to impress upon the minds of the hearers a suspicion of the plff.'s. having committed a criminal act, such an inference may and ought to be drawn whatever form of expression may have been adopted, whether the words spoken impute such criminal act directly or indirectly. And it is not necessary to prove the precise words alledged in the declaration; but it is sufficient to prove the substance of them. The substance of the slander imputed here is, that the plff. burned down the house and barn in question, or caused it to be done. The words must be spoken in the same manner; for instance, interrogative words proved, will not support words alledged affirmatively; or words alledged to have been spoken *to* the plff. are not supported by words proved to have been spoken to a third person *of* the plff. It is objected to the evidence of Mr. Wright, that it does not *certainly* appear that the conversation detailed by him, took place before the commencement of the action. In order to prove the slander, it ought to appear that the words were spoken before the action brought. This is a matter of which you are to judge from the testimony of this witness. We may

be allowed to say, if the words spoken to Mr. Wright were spoken before the action brought, they in substance do support the allegation in some of the counts of the declaration. If they were not spoken before the action brought, then they can be only used in proof of express malice, and to aggravate the damages on the ground, that every repetition of a slander is evidence of malice, and may be used to aggravate damages.

Words spoken in the course of a judicial trial, or in a legal proceeding before a justice of the peace, either in a civil or criminal case, are not in themselves actionable; and, therefore, the only use that can be made of the testimony of Dr. Gibbons, will be to increase the damages, in case you should be of opinion that the slander has been proved by any other witness. Even if the deft. instituted this proceeding before the justice from the most malicious motives, it would not itself be the foundation of an action of slander; but, if the slander is proved by other testimony, then what he said to Dr. Gibbons, if you believe he was actuated by malice or a design to injure the plff. may be used in this action to show the design and intention of the words spoken to other witnesses.

You alone are to judge of the credit to be attached to the witnesses. If you give credit to Jacob Wright or William Tobin, the slanderous words imputed to the deft. or those in some of the counts in the declaration have been proved; and, consequently, the plff. is entitled to your verdict for damages. What those damages ought to be it is not for us to say. The law has made you exclusively the judges; and you, exercising a sound discretion, are to say what redress the plff. ought to receive for the wrong which has been done him. We have already told you that the words imputed to the deft. are in themselves actionable; that wherever one man uses towards his neighbour such words as these, the law implies malice, and it presumes that the party thus slandered is injured, and is entitled to damages. If, in addition to the speaking of the words, the deft. be actuated by *express* malice, then you may give exemplary or vindictive damages. If Cannon uttered these words designedly to prejudice or injure the plff., that is what the law calls express malice. You will therefore in considering all the testimony in this case, ascertain whether the deft. did design in uttering the words to injure the plff.; and, if he did, you will be warranted in giving vindictive damages. What shall be the amount of the damages you are to judge from all the evidence."

The jury gave a verdict for the plff.   Damages $2,000.